UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**AMERICAN GIRL, LLC**
        **Plaintiff,**

v.                                                                                              Case No. 05-C-0814

**NAMEVIEW, INC. and JOHN DOE**
        **Defendants.**

## DECISION AND ORDER

Plaintiff American Girl, LLC brought this action against defendant Nameview, Inc., and a fictitious defendant, John Doe, alleging trademark infringement and related claims. I have subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338. Before me now is plaintiff's ex parte motion for a temporary restraining order ("TRO") and preliminary injunction.

### I. BACKGROUND

Plaintiff owns the trademark AMERICAN GIRL and uses it in connection with fictional characters, books about the characters, dolls embodying the characters, doll accessories, and girls' clothing. Plaintiff sells its products, in part, through its web site <www.americangirl.com>, which has received over 12.3 million "hits" (i.e., visits to the web site) in 2005 alone.

On July 28, 2005, plaintiff discovered a web site with the domain name <www.amercangirl.com>. This domain name is identical to <www.americangirl.com> except for the omission of the first "i". An employee of plaintiff discovered this site by accidentally typing <www.amercangirl.com> when she meant to type

<www.americangirl.com>. The <www.amercangirl.com> web site contains links to web sites with pornographic and other adult content.

Upon discovering <www.amercangirl.com>, plaintiff commenced the present action and moved for a TRO. Plaintiff has identified the registrar of the <www.amercangirl.com> domain name, Nameview, Inc., and has named it as a defendant. However, plaintiff has been unable to identify the person or entity ultimately responsible for the site and thus has named that person as a John Doe defendant. Plaintiff's inability to identify John Doe results in part from the fact that Nameview offers its customers a "free identity shield," which prevents Internet users from identifying entities that have registered domain names with Nameview. See Nameview Home Page, http://nameview.com (last visited Aug. 9, 2005). According to its web site, Nameview's principal offices are in Canada, but Nameview also lists an address for customer support in Vancouver, Washington. Plaintiff has not attempted to serve Nameview pursuant to Fed. R. Civ. P. 4, but has attempted to notify it of the present action by using the contact information provided on its web site. To date, Nameview has not entered an appearance or responded to plaintiff's correspondence.

Plaintiff asks that I issue a TRO ordering Doe to cease using the <www.amercangirl.com> domain name and ordering Nameview to disable such domain name, transfer the name to plaintiff, and reveal Doe's identity.

## II. DISCUSSION

Plaintiff alleges that the defendants' actions in connection with the <www.amercangirl.com> domain name constitute trademark infringement, unfair competition and trademark dilution and that defendants have committed "typosquatting"

2

in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).[1] Before discussing plaintiff's request for a TRO, I will briefly summarize the Internet's domain name system.

## A.    The Domain Name System

A person who desires to create an Internet web site must reserve a location on the Internet by obtaining an Internet Protocol ("IP") address for her computer. The IP address is four numbers separated by periods, and each number is less than 256, e.g., 192.200.44.69. In order to eliminate the need for Internet users to keep track of computers' IP addresses and to make using the Internet easier, specific "domain names" – such as <www.americangirl.com> or <www.uscourts.gov> – are assigned to correspond to the IP addresses. Thus, a user who knows a web site's domain name can access the site without knowing the corresponding computer's IP address. See generally Torsten Bettinger, Domain Name Law and Practice: An International Handbook 3-6 (2005); Jane K. Winn & Benjamin Wright, The Law of Electronic Commerce § 11.03[A] (4th ed. 2005).

---

[1] For an overview of cybersquatting and typosquatting and a history of legal attempts to combat these practices, see generally Christopher G. Clark, Note, The Truth in Domain Names Act of 2003 and a Preventative Measure to Combat Typosquatting, 89 Cornell L. Rev. 1476 (2004). Generally, cybersquatting is "the practice of preemptively registering popular domain names – often the trademarks of third parties – in order to rent or sell the domain name back to the owner of the trademark for a value far exceeding the cost of the domain name." Id. at 1487. Typosquatting, like cybersquatting, "involves registering domain names in order to profit from the success and popularity of others. While cybersquatting entails purchasing domain names and holding them for ransom, typosquatting uses misspellings or variations of legitimate domain names in order to trick individuals into viewing unrelated advertisements or web sites." Id. at 1488 (footnote omitted). Typosquatting is profitable because a web site with a domain name consisting of a common misspelling of a famous trademark generates Internet traffic and, therefore, advertising revenue. Id. at 1489.

In order to use a domain name in connection with a web site, the web site operator must register the name with one of a number of competing companies known as "registrars." Registrars accept domain name registrations on a first-come, first-served basis. When a person seeks to register a domain name, the registrar will first check to see if the name is available. If so, the registrar will ask the registrant to provide various contact and technical information in order to complete the registration. The registrar then keeps the contact information – which the registrar makes publicly available through its WHOIS database[2] – and submits the technical information to a central directory known as a "registry." There is a registry for every "top level domain" or "TLD." A TLD is the part of the domain name that is farthest to the right, e.g., the "com" in <www.americangirl.com>, or "gov" in <www.uscourts.gov>. The registry provides a central directory of all domain names for the registry's TLD and provides other computers on the Internet with the information necessary to locate the web site associated with a particular domain name. See generally Bettinger, supra, at 22-24; Internet Corporation for Assigned Names and Numbers ("ICANN")[3] Frequently Asked Questions Page, http://www.icann.org/faq (last visited Aug. 9, 2005); VeriSign Domain Name Registry Services Frequently Asked Questions Page, http://www.verisign.com/products-services/naming-and-directory-services/naming-services/page_001083.html (last visited Aug. 9, 2005).

---

[2]A WHOIS database contains information about the registration of the domain name, including the registrant's contact information.

[3]ICANN is a non-profit corporation responsible for, among other things, managing the domain name system.

In the present case, John Doe is the web site operator, or "registrant," Nameview is the registrar of the domain name <www.amercangirl.com>, and an entity named VeriSign, Inc., the registry for all ".com" TLDs, is the relevant registry.

**B.     Request for TRO**

A court may grant an order pursuant to an ex parte request only under extremely limited circumstances. Am. Can Co. v. Mansukhani, 742 F.2d 314, 321 (7th Cir. 1984). The applicant's attorney must certify in writing his efforts to give notice and the reasons that notice should not be required, and the court must conclude that the applicant will suffer irreparable injury before the adverse party can be heard. Fed. R. Civ. P. 65(b). The stringent restrictions on the availability of ex parte TROs "reflect[s] the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted to both sides of a dispute." Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 438-39 (1974). Ex parte TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Id. at 439. Thus, TROs remain in effect for only ten days or until an adversarial hearing is held to determine whether to convert the TRO into a preliminary injunction, whichever period is shorter. Fed. R. Civ. P. 65(b); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2951 (2d ed. 1995). Further, TROs should be granted ex parte only when notice to the adverse party is impossible "either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing." American Can Co., 742 F.2d at 322. There is also "a very narrow band of

cases in which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action." Id.

In the present case, I have a number of reservations about granting plaintiff's request for a TRO against Doe and Nameview. First, I am uncertain whether I have personal jurisdiction over either defendant. Because "a restraining order or injunction is an in personam restraint issued against a party over whom the court has acquired in personam jurisdiction," "[i]f the court lacks personal jurisdiction over a party, it should not enter an injunction or restraining order against that party." 13 James Wm. Moore et al., Moore's Federal Practice § 65.61[1] (3d ed. 2005); see also Zimmerman v. U.S. Football League, 637 F. Supp. 46, 47 (D. Minn. 1986) (stating that court cannot issue temporary restraining against defendants over whom it lacks personal jurisdiction); 11A Wright, Miller & Kane, supra, § 2956 (stating that "[a] court ordinarily does not have power to issue an order against a person who is not a party and over whom it has not acquired personal jurisdiction"). Plaintiff has the burden of demonstrating the existence of personal jurisdiction. Steel Warehouse of Wis., Inc. v. Leach, 154 F.3d 712, 714 (7th Cir. 1998). Pursuant to Fed. R. Civ. P. 4(k), unless plaintiff can show that defendants are not subject to the jurisdiction of the courts of general jurisdiction of any state or unless it points to a statute of the United States authorizing service on the defendants in this case, I may exercise personal jurisdiction over them only if a court of general jurisdiction in Wisconsin could do so.[4] See Janmark, Inc. v. Reidy, 132 F.3d 1200, 1201-02 (7th Cir. 1997).

---

[4]Plaintiff has not pointed to a federal statute authorizing personal jurisdiction nor has it attempted to demonstrate that the defendants are not subject to the personal jurisdiction of any state court. Thus, I focus on whether defendants would be subject to personal jurisdiction in Wisconsin.

In the present case, plaintiffs have made no effort to show that personal jurisdiction exists. Further, because John Doe's only known contact with Wisconsin is a "passive" web site,[5] it is unlikely that I could exercise personal jurisdiction over him or it.[6]  See Jennings, 383 F.3d at 449-50 (7th Cir. 2004).  And although Nameview's web site is more "interactive" than Doe's in that it allows users to register domain names, I doubt that I could exercise personal jurisdiction over it because the record does not indicate that Nameview ever "purposefully availed" itself of Wisconsin's laws by accepting a domain name registration from someone in the state.  See Steel Warehouse, 154 F.3d at 714 (stating that "[d]ue process requires that the defendants have 'purposefully established minimum

---

[5] A "passive" web site is one that "does little more than make information available to those who are interested in it," Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), and may be contrasted with more "interactive" web sites, through which consumers can, for example, order the defendant's goods, Jennings v. AC Hydraulic A/S, 383 F.3d 546, 449-50 (7th Cir. 1997).  In the present case, Doe's web site does little more than make information available.  Doe does not sell goods or services nor solicit business through the site.  Indeed, there is no evidence that Doe ever made any contact with anyone in Wisconsin through the web site.  Thus, the web site is passive.

[6] However, because Doe's web site appears to flagrantly violate plaintiff's trademark rights, I may be able to exercise personal jurisdiction over Doe because the web site is viewable in Wisconsin.  In Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. P'ship, the Seventh Circuit suggested that personal jurisdiction in a trademark suit could exist over a party whose only contact with the forum was infringing a trademark that was used "mainly" in the forum.  34 F.3d 410, 411-12 (7th Cir. 1994).  However, the present case is some distance from Indianapolis Colts because it involves a trademark that, for all the record reveals, is not used in Wisconsin more than it is used anywhere else.  I decline to extend Indianapolis Colts to the facts of the present case on an ex parte basis where plaintiff has not developed a legal argument supporting such an extension.  See also Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998) (stating that "simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another"); 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 32:45.1 (4th ed. 2005) (noting that the majority of federal courts have concluded that a court cannot obtain personal jurisdiction over a defendant based merely on an alleged trademark violation that occurs on a passive web site viewable within forum).

contacts with the forum State'"). Thus, plaintiff has not established that I have personal jurisdiction over either defendant and, under such circumstances, I do not believe that it would be appropriate to issue a TRO.

Even if I could exercise personal jurisdiction over Nameview, I would not issue a TRO against it because plaintiff has no likelihood of success on the merits of its claims against Nameview. See 11A Wright, Miller & Kane, supra, § 2951,at 265-68 (noting that, to obtain TRO, courts normally require plaintiff to demonstrate reasonable probability of success on merits). Although plaintiff alleges that Nameview infringed its trademark and committed other violations of law, Nameview has done no more than accept the registration of the domain name <www.amercangirl.com>. As mentioned, registrars register domain names on a first-come, first-served basis. Further, registrars are not obliged to examine domain names to ensure that the registrant is not violating the rights of a third-party. See Lockheed Martin Corp. v. Network Solutions, Inc., 141 F. Supp. 2d 648, 651 (N.D. Tex. 2001); Bettinger, supra, at 24. Thus, a registrar who simply accepts the registration of a domain name generally is not liable for trademark infringement or dilution, unfair competition, or violations of the ACPA. See Bird v. Parsons, 289 F.3d 865, 877-81 (6th Cir. 2002) (finding domain name registrar not liable for trademark infringement, unfair competition, trademark dilution, or violations of ACPA); Lockheed Martin Corp., 141 F. Supp. 2d at 654-55 (finding domain name registrar not liable under ACPA); Acad. of Motion Picture Arts & Sciences v. Network Solutions, Inc., 989 F. Supp. 1276, 1278-81 (C.D. Cal. 1997) (finding domain name registrar not liable for dilution, contributory dilution, contributory or direct infringement, or unfair competition); Lockheed Martin Corp. v. Network Solutions, Inc., 985 F. Supp. 949, 956-67 (C.D. Cal. 1997), aff'd, 194 F.3d 980

(9th Cir. 1999) (finding domain name registrar not liable for trademark infringement, unfair competition, trademark dilution, or contributory infringement); see also Bettinger, supra, at 912 (stating that "[a]bsent collusion, or some other affirmative malfeasance on the part of the Registry, US courts will not hold registries of domain names liable for contributory trademark infringement or unfair competition"). Plaintiff does not argue that Nameview's conduct differs from that of the registrars in the above-cited cases.[7] Thus, I conclude that plaintiff is unlikely to succeed on any of its claims against Nameview.

Accordingly, for the reasons stated, I will deny plaintiff's ex parte motion for a TRO.

**C.    Plaintiff's Alternatives**

Although plaintiff is not entitled to an ex parte TRO, it is not without a remedy. Indeed, plaintiff has at least two alternative courses of action that could provide it with effective, if not immediate, relief. First, plaintiff could file an in rem action against <www.amercangirl.com> under the ACPA in the Eastern District of Virginia or, perhaps, in the Western District of Washington. The ACPA authorizes the owner of a mark to file an in rem civil action against a domain name "in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located." 15 U.S.C. § 1125(d)(2)(A). A mark owner can bring such an action only if it cannot obtain personal jurisdiction over a person who would have been a defendant in a regular civil action under the ACPA. Id. § 1125(d)(2)(A)(ii). In the present case, it appears that plaintiff could satisfy this condition because it seems

---

[7]Plaintiff notes that Nameview shields the identity of its registrants in its WHOIS database but makes no argument that doing so is unlawful. Thus, I attribute no significance to this fact.

unlikely that it will be able to obtain personal jurisdiction over Doe, the proper defendant in a regular action under the ACPA. Further, all that a plaintiff in an ACPA in rem action needs to do to effect service is send notice to the registrant at the postal and e-mail address provided by the registrant to the registrar and publish notice of the action "as the court may direct promptly after filing the action." Id. § 1125(d)(2)(A)(ii)(II).[8]  Finally, the relief available in an in rem action under the ACPA is "a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." Id. § 1125(d)(2)(D)(i).

In the present case, VeriSign, Inc. – the registry for all ".com" TLDs – is located in the Eastern District of Virginia, and thus plaintiff could file an in rem suit in such district and have the <www.amercangirl.com> domain name cancelled or transferred to plaintiff. NBC Universal, Inc. v. NBCUNIVERSAL.COM, ___ F. Supp. 2d ___, 2005 WL 1712887, at *1 (E.D. Va. July 14, 2005); see generally America Online, Inc. v. Aol.org, 259 F. Supp. 2d 449 (E.D. Va. 2003); Globalsantafe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610 (E.D. Va. 2003). Further, since Nameview appears to have offices in Vancouver, Washington, and thus may be "located" there within the meaning of 15 U.S.C. § 1125(d)(2)(A),[9] plaintiff may be able to bring an in rem action in the Western District of Washington.

Plaintiff's second option is to file a complaint under ICANN's Uniform Domain Name Dispute Resolution Policy ("UDRP"), available at ICANN Web Site,

---

[8]Although Nameview's identity shield prevents plaintiff from knowing Doe's identity, Nameview still provides an e-mail and postal address through which Doe can be contacted and therefore served in accordance with § 1125(d)(2)(A)(ii)(II).

[9]I express no view as to whether having an office in the Western District of Washington means that Nameview is "located" there within the meaning of § 1125(d)(2)(A).

http://www.icann.org/dndr/udrp/policy.htm (last visited Aug. 9, 2005), to which all registrants submit when they register a domain name with an ICANN-accredited registrar such as Nameview. The UDRP is an administrative alternative dispute resolution policy which creates a procedure specifically designed to provide a fast and cheap means for resolving domain name disputes. Bettinger, supra, at 937-38. On average, it takes no more than two months to resolve a domain name dispute under the UDRP. Id. at 938; see also Lockheed Martin Corp., 141 F. Supp. 2d at 652 (noting that, at time of decision – May 1, 2001 – average time from filing to decision under UDRP was fifty-two days). Thus, plaintiff may desire to take advantage of this alternative.

Utilizing one – or both[10] – of the two alternatives described above most likely will provide plaintiff with effective relief faster than any procedure available to this court. However, plaintiff may insist on continuing the present action in this jurisdiction, since my ruling on the present motion holds only that plaintiff is not entitled to an immediate ex parte TRO. If plaintiff chooses to continue this action, however, it must first effect proper service on defendants.[11] Once plaintiff serves defendants and establishes that I have personal jurisdiction over them, plaintiff may seek a preliminary injunction disabling Doe's web site.

---

[10]Because bringing an in rem action under § 1125(d)(2) and filing a complaint pursuant to the UDRP are not mutually exclusive, plaintiff could pursue both alternatives simultaneously.

[11]Because defendant Doe is unknown, if plaintiff so requests I will allow it to conduct discovery to identify him or her. However, I note that until Nameview is properly served with process and plaintiff demonstrates that Nameview is subject to personal jurisdiction here (or Nameview waives any objection to personal jurisdiction), I will treat Nameview as a non-party to this action for purposes of discovery.

**D.     Motion to Transfer Venue**

After plaintiff moved for a TRO, I advised it that I would likely deny the motion because I doubted that I could obtain personal jurisdiction over defendants. In response, plaintiff moved to transfer the case to the Western District of Washington, where it believes that Nameview is subject to personal jurisdiction. However, as explained above, even if Nameview were subject to the jurisdiction of a federal court, plaintiff would not be entitled to a TRO against it because plaintiff has not demonstrated that Nameview has violated plaintiff's rights. Thus, in light of this order, plaintiff may no longer want the action transferred to the Western District of Washington. Instead, it may prefer the Eastern District of Virginia, or it may want to stay here. Because I am uncertain as to plaintiff's preference, I will deny the motion to transfer without prejudice. However, if plaintiff desires a change of venue, it may file a fresh motion.

## III. CONCLUSION

For the reasons stated, plaintiff's motion for an ex parte TRO is **DENIED**, and its motion to transfer venue is **DENIED WITHOUT PREJUDICE**.

Dated at Milwaukee, Wisconsin, this 9 day of August, 2005.

/s
LYNN ADELMAN
District Judge